## QUESTIONS RELATING TO CONDEMNATION FOR A RAILROAD.

[Court of Insolvency of Hamilton County.]

THE CINCINNATI INTERTERMINAL RAILROAD COMPANY v. MICHAEL MURRAY ET AL.

Decided, November, 1903.

*Condemnation—Both Termini of the Railway Within the Same Municipality—Effect of Lease of Line Before Building—When Necessity for Appropriation Arises—Failure to Agree—School Property not Exempt—Appropriation.*

1 The provisions of Section 3270 as to the construction of a railroad between "places," permits of the construction of a road having both of its termini in the same municipality.

2. The leasing of its road is not evidence of the abandonment by the company of the purposes for which it was created, and in no way impairs its right to exercise the power of eminent domain.

.3. Where the location of its line is not unreasonable, the necessity for the appropriation of a particular piece of property arises upon the failure of the parties to agree upon the price to be paid for it.

.4. But where property is owned by several persons jointly, there should be an effort made to agree with each owner, unless his residence is beyond the state or is unknown.

.5. Property in which a Catholic school is conducted, but which is open to all children, is subjected to condemnation.

McNEILL, J.

The plaintiff is a corporation formed for the purpose of "constructing or acquiring, maintaining, operating and owning a single or double track railroad * * * commencing in the western part of the city of Cincinnati, or at near the intersection of McLean avenue and Hopkins street, and extending in a southerly and easterly direction throughout such streets, highways and private lands in the southern portion of said city of Cincinnati as may be most eligible and suitable * * * to a point in the eastern part of said city of Cincinnati, at or near the intersection of Third street and Eggleston avenue," and has brought this proceeding to appro-

302 HAMILTON COUNTY INSOLVENCY COURT.

Cincinnati Interterminal R. R. v. Murray et al. [Vol. I, N. S.

priate certain private property for a right of way between the points named in its charter.

It will be observed that both termini of the proposed railroad are within the city of Cincinnati. It is contended on behalf of defendants on preliminary hearing that the statutes of Ohio do not authorize the creation of a railroad company for the purpose of constructing, maintaining and operating a railroad, both termini of which are to be within the same municipality. Whether this contention be correct or not depends upon the construction that may be given to the language used in Section 3270 of our Revised Statutes, which reads as follows:

"Section 3270. A railroad company now existing or hereafter created, may maintain and operate, or construct, maintain and operate a railroad with a single or double track; with such side track, turnouts, offices, depots, round houses, machine shops, water tanks, telegraph lines and other necessary appliances as it deems necessary, between the points named in the articles of incorporation, commencing at or within, and extending to or into, any city, village, town, or place named as a terminus of its road."

It is clear that under the provisions of the above section a railroad may be constructed and operated, commencing at a *place* and extending to a *place.* "Place" is defined to be "a particular point or portion of space * * * ; a definite locality or location, situation, site."

There is nothing in this section of our statutes to indicate that when a railroad is constructed between *"places,"* that either or both of the places shall be either within or without a municipality.

The charter of the plaintiff, the Cincinnati Interterminal Railroad Company, authorizes the company to construct and operate a railroad, commencing at a place, viz., at or near the intersection of McLean avenue and Hopkins street, in Cincinnati, and extending to a place, viz., to a point in the eastern part of said city of Cincinnati, at or near the intersection of Third street and Eggleston avenue. Hence it is a valid railroad company under the provisions of Section 3270, Revised Statutes, and being such a company the power of eminent domain is conferred upon it by Section 3281, Revised Statutes.

Evidence was introduced showing that the plaintiff had entered into a contract with the Louisville & Nashville Railroad Company, by which it undertook to grant to the latter company a lease of its right of way upon the same being acquired by plaintiff, upon terms specified in the contract, which would give to the Louisville & Nashville Company the exclusive right in perpetuity to operate said road, yielding therefor a rental of $16,000 per year, to be paid to the Union Savings Bank & Trust Company, as trustee for the stockholders of plaintiff company. And as a further consideration for said lease the Louisville & Nashville Company is to build the railroad tracks, etc., and assume all responsibility for damages, etc., that may arise from such construction.

It is claimed on behalf of the defendants that this amounts to an abandonment on the part of the plaintiff of the purposes for which it was organized.

The $16,000 to be reserved as rent in said contemplated lease is to be distributed by said Union Savings Bank & Trust Company, trustee, to the stockholders of plaintiff company.

It was held by our Supreme Court in the case of *State, ex rel*, v. *Standard Oil Company*, 49 O. S., 137, "that a corporation is a legal entity apart from the natural persons who compose it, is a mere fiction introduced for convenience in the transaction of its business and of those who do business with it; but like every other fiction of the law, when urged to an extent and purpose not within its reason and policy, may be disregarded." So that it seems to me that the reservation of the contemplated rent in favor of the trustee for the benefit of the stockholders of the plaintiff, without any distinction between them, is equivalent to reserving the rent in favor of the plaintiff corporation itself. In any event this contract is in no way in contravention of the purposes for which the plaintiff corporation was formed, but in furtherance of that purpose, because whatever company may operate this road when completed will be subject to all laws which regulate and govern common carriers of passengers and freight, and the rights and interests of the public will be subserved. It is clear that there is no intent on the part of plaintiff to abandon, but rather to fully carry out, though it may be through the agency of another

304    HAMILTON COUNTY INSOLVENCY COURT.

Cincinnati Interterminal R. R. v. Murray et al. [Vol. I, N. S.

company, the purposes for which it was created; and I think the case of *Garlick* v. *Railway Co.,* 67 O. S., 223, fully sustains the validity of this agreement entered into by the plaintiff with the Louisville & Nashville Company, and without in any way impairing the plaintiff's right to exercise the power of eminent domain.

The court has no right to dictate to the plaintiff the exact course it shall follow in locating the line of its road between termini fixed in its charter, and where the course established by it is not unreasonable, the necessity for the appropriation of a particular piece of property arises upon the failure of the parties to agree upon a price to be paid for the same.

It is contended on behalf of plaintiff that where there are several parties interested in the same piece of property, and there is an inability to agree with any one of such parties, that the plaintiff may proceed to appropriate the entire tract, without any attempt to agree with the other parties interested in the property, on the ground that its necessity requires the possession of the entire property, and that the refusal of any one of the parties interested in the property to agree constitutes an inability to agree for the whole. I am of opinion that an effort should be made to agree with each owner, and that no party should be subjected to the trouble and expense of an appropriation proceeding simply because a party interested with him in the property may not be willing to accept a price that the party seeking to appropriate may consider reasonable. The railroad company has the power to appropriate any interest that it may not be able to acquire by agreement, whether undivided or otherwise; where the residence of an owner is beyond the state or unknown, under Section 6415, Revised Statutes, no effort to agree is required.

It is claimed that the St. Patrick's school property on Third street, in which a Catholic school is conducted, and which is open to all children, is property that is already applied to public use, and that the appropriation now sought for railroad purposes would destroy that use, and hence can not be made. While it is true that this is a use of a public character, and in the highest degree commendable, yet the ownership is private, and the general public have no right to command or demand its continuance. Randolph in his

work on Eminent Domain, Section 56, says: "An essential feature of a public use is that the public may enjoy its benefits, and, if it be an undertaking for the performance of services, command the services."

I am therefore of opinion that the property may be appropriated.

*Walter L. Granger, Byron M. ClenDening* and *O. J. Cosgrave,* for plaintiff.

*Morison R. Waite, Ellis G. Kinkead, Edward J. Dempsey, G. C. Wilson* and *Keam & Keam,* for property owners.